IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTOINE SLAUGHTER, | | |
|     Petitioner, | No. CIV S-10-1143 JAM DAD P | |
|    vs. | | |
| K. HARRINGTON, Warden, | | |
|     Respondent. | <u>FINDINGS AND RECOMMENDATIONS</u> | |

Petitioner, a state prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition before this court petitioner challenges a judgment of conviction entered against him on May 22, 2007 in the San Joaquin County Superior Court pursuant to a jury verdict finding petitioner guilty of torture, rape by force or fear, corporal injury to a former cohabitant, dissuading a witness by force or threat, false imprisonment by violence, and obstructing or delaying a peace officer, along with findings that numerous sentence enhancement allegations were true. Specifically, petitioner challenges several such sentencing enhancements based on findings that he personally used three dangerous

/////

/////

/////

or deadly weapons (a bat, bed rail, and vacuum)[1] during the commission of the rape, witness dissuasion, and false imprisonment counts; and that he personally inflicted great bodily injury[2] in the commission of the rape, witness dissuasion, and false imprisonment counts.  Petitioner also challenges his sentence of sixty-eight years, four months in state prison imposed by the San Joaquin County Superior Court on July 9, 2007.

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## BACKGROUND

I. Factual Summary

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In February 2004, defendant and C. met at a QuikStop market and started dating.  C. moved in with defendant a few days later. During their relationship, defendant hit her when he thought she was dating another man and had sex with her after she told him "no."  She never reported these incidents to police because she "loved him."
>
> In September 2005, C. ended the relationship and moved out.  She began dating another man, although she continued speaking with defendant.
>
> On March 10, 2006, defendant telephoned C. and asked her to help him find a birthday present for his father.  She agreed, and he picked her up in his car.  After they finished shopping, defendant picked up his son from school at about 3:30 p.m. or 4:00 p.m. Unannounced, defendant then drove them all back to his house.
>
> At the house, defendant called C. into the garage.  She complied although she had a feeling "something was going to happen." Defendant followed her into the garage and closed the door.  He

---

[1] Cal. Penal Code. § 12022(b)(1).  Subsequent statutory references are to the California Penal Code, unless otherwise specified.

[2] § 667.61 (great bodily injury); § 12022.7(e) (great bodily injury in circumstances involving domestic violence).

accused her of having sex with his cousin.  C. denied the allegation, although it was true.  Defendant then grabbed her neck and hit her on the face, causing her to fall to the ground.  She could not get up because defendant kept kicking and punching her.  He then hit her on her back with a baseball bat causing the bat to break, hit her on her legs with a bed rail, "body slammed" her onto the cement floor, and hit her with a vacuum cleaner pole causing it to bend.  C. was in "[e]xcruciating pain," her back and one finger were fractured, and her face was swollen.  She was unable to walk.

About 20 to 30 minutes later, defendant told C. to go inside the house to the bathroom.  While C. was crawling to the bathroom, defendant took away her cellular phone.  She was scared and thought she was going to die.  Inside the bathroom, defendant "back-hit" C. on her lip.  He ordered her to undress and "pop it" FN1 for him.  While C. was undressing, defendant called his son to the bathroom and told him C. was a "ho" and to "just laugh about it."  Although C. was in tremendous pain, she danced naked in front of them while they laughed.

FN1. "Pop it" is a dance move in which a person "shake[s] [ones] butt."

Eventually, defendant's son went to his grandmother's house, and defendant ordered C. to go to the dining room.  He made her watch a videotape he had secretly made of the two of them having sex.

Defendant then ordered C. to go to his son's bedroom.  He followed her and started watching a pornographic movie while masturbating.  He asked her if they could have anal sex. When she said "no," he went to change the lock on the door and made a telephone call.  It was dark outside.

After defendant hung up the telephone, C. heard a knock on the door and two women (one of whom was the girlfriend of defendant's cousin) came to the house.  Defendant told them C. was in the bedroom.  The women entered the bedroom and told C. she was lucky because they would not beat her up as she was "already messed up."

At 2:45 a.m. on March 11, 2006, Stockton police officers came to defendant's house in response to a call that somebody inside had been beaten.  They banged loudly on the front door and windows but left after six or seven minutes because nobody answered the door.  Defendant had told C. if she told police the truth he would kill her.

Later, defendant resumed watching a pornographic movie and masturbating in the bedroom. He then got on top of C. and stuck his penis in her vagina. Crying, she repeatedly told him "no" and that it hurt. Defendant "just kept doing it" until he ejaculated on

3

> her thigh. Minutes later, at noon, the police returned to the house. When officers told defendant they were going to break down the door, defendant told C. that if she said something, he was "going to break [her] jaw." The officers had to help C. out of the bedroom because she still could not walk. When they brought defendant out of the bedroom, he told C. to tell police "it wasn't him" and "that he didn't do it." C. believed she would have died if the officers had not come.

(Resp't's Lod. Doc. 4, App. A (hereinafter "Opinion") at 2-5.)

II. <u>Procedural Summary</u>

On May 7, 2007, a jury found petitioner guilty of various crimes and found numerous sentencing enhancement allegations to be true, all arising out of his approximately 19-hour attack on his former live-in girlfriend. Specifically, the jury found petitioner guilty of: (1) torture (§ 206); (2) rape by force or fear (§ 261(a)(2)); (3) corporal injury to a former cohabitant (§ 273.5(a)); (4) dissuading a witness by force or threat (§ 136.1(c)(1)); (5) false imprisonment by violence (§ 236); and (6) obstructing or delaying a peace officer (§ 148)). The jury also found that petitioner (1) personally used three dangerous or deadly weapons (a bat, bed rail, and vacuum) during the commission of the torture, rape, corporal injury, witness dissuasion, and false imprisonment (§ 12022(b)(1)); (2) personally inflicted great bodily injury in the commission of the rape (§ 667.61); and (3) inflicted great bodily injury under circumstances involving domestic violence in the commission of the rape, corporal injury, witness dissuasion, and false imprisonment (§ 12022.7(e)). (Vol. 3 Clerk's Transcript on Appeal (hereinafter "3CT") at 803-22.) On July 9, 2007 in the San Joaquin County Superior Court, petitioner was sentenced to a term of sixty-eight years, four months to life in state prison. (5CT 1263-1266.)

Petitioner appealed his judgment of conviction to the California Court of Appeal for the Third Appellate District. (Resp't's Lod. Doc. 1.) On October 15, 2008, the state appellate court affirmed petitioner's conviction in a reasoned opinion. On November 19, 2008, petitioner filed a petition for review in the California Supreme Court. (Resp't's Lod. Doc. 4.)

/////

On January 14, 2009, the California Supreme Court summarily denied that petition. (Resp't's Lod. Doc. 5.)

      Petitioner commenced this action on May 10, 2010 by filing a petition for writ of habeas corpus. (Doc. No. 1.) On June 21, 2010, pursuant to court order dated May 24, 2010, petitioner filed his first amended petition. (Doc. No. 7.) On July 29, 2010, pursuant to court order dated June 28, 2010, he filed the operative second amended petition. (Doc. No 9, hereinafter "Pet.") Respondent filed answer on November 10, 2010. (Doc. No. 16.) Petitioner sought and was granted an extension of time to file a traverse (Doc. Nos. 17, 18 & 19), but did not file one.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

      An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Wilson v. Corcoran</u>, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

      Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. No Substantial Evidence that Enhancement Conduct Occurred "In the Commission" of the Crimes For Which Petitioner Was Convicted.

The gravamen of petitioner's claim in this regard is that his sentence on certain counts was improperly enhanced based on events that, in petitioner's view, had nothing to do with the offense conduct related to those counts. In claim 1, petitioner argues that there was no evidence introduced at trial that the events giving rise to the great bodily injury and deadly weapon enhancements occurred "in the commission" of the rape, as found by the jury. Rather, he argues, the "enhancements occurred long before the rape - 19 hours earlier and did not recur at any point thereafter." (Pet. at 4.)[4]

Similarly in claim 3, plaintiff argues that the great bodily injury and deadly weapon enhancements were improperly applied to the witness dissuasion and false imprisonment counts because "all of the conduct involved in the enhancements was separate and distinct from" these offenses. (Pet. at 5.)

/////

---

[4] The California Court of Appeal's factual summary indicates that the evidence introduced at trial was that petitioner hit the victim with a baseball bat, bed rail, and vacuum cleaner pole on the afternoon of March 10, 2006, and did not rape her until almost noon the next day. (Opinion at 3-5.)

8

The California Court of Appeal rejected petitioner's arguments in this regard, reasoning as follows:

> Sufficient Evidence Supports The Jury's Findings That Defendant Used The Weapons And Inflicted Great Bodily Injury In The Commission Of The Rape, Witness Dissuasion, And False Imprisonment
>
> Defendant contends there is insufficient evidence that he used the weapons and inflicted great bodily injury in the commission of the rape, witness dissuasion, and false imprisonment. We disagree.
>
> Whether a defendant used a weapon or inflicted great bodily injury in the commission of an offense is a question of fact for the jury to decide. (See People v. Masbruch (1996) 13 Cal.4th 1001, 1007 (Masbruch) [firearm use].) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support the [enhancements].' " (People v. Bolin (1998) 18 Cal.4th 297, 331 .)
>
> The California Supreme Court has held that the phrase " 'in the commission of' " for purposes of weapon-use enhancement statutes must be " 'broadly construed.' " (Masbruch, supra, 13 Cal.4th at p. 1007.) This expansive interpretation has also prevailed in cases interpreting great bodily injury enhancements. (See, e.g., People v. Carroll (1970) 1 Cal.3d 581, 584-585.)
>
> Masbruch provides an example of the evidence needed to uphold a jury's finding of a weapon-use enhancement. There, the defendant asserted he "did not 'use' the gun 'in the commission of' the sex offenses because he displayed it only at the outset of his criminal activity, approximately one hour before he committed the sex offenses, and he left [the victim] several times during the interim to commit crimes in other parts of the house." (Masbruch, supra, 13 Cal.4th at p. 1006.) The Supreme Court disagreed, explaining as follows: "In considering whether a gun use occurred, the jury may consider a 'video' of the entire encounter; it is not limited to a 'snapshot' of the moments immediately preceding a sex offense. Thus, a jury could reasonably conclude that although defendant's presence with the victims was sporadic, the control and fear created by his initial firearm display continued throughout the encounter." (Masbruch, supra, 13 Cal.4th at p. 1011.)
>
> Masbruch applies here. Looking at a "video" of the entire encounter instead of a "snapshot" of the moments immediately preceding the rape, witness dissuasion, and false imprisonment, the following facts appear: Defendant isolated C. in the garage and accused her of infidelity with his cousin. When C. denied it, defendant repeatedly beat and kicked her with his hands and feet. He then hit her on her back with a baseball bat, hit her on her legs

9

|   |   |
|---|---|
| 1 | with a bed rail, "body slammed" her onto the cement floor, and hit her with a vacuum cleaner pole. Defendant's actions left C. in "[e]xcruciating pain" with a fractured back and finger. She was unable to walk. "Having thereby incapacitated his victim[ ], defendant was free to commit whatever crimes he desired at his leisure and in any location." (Masbruch, supra, 13 Cal.4th at p. 1011.) And he did. On their way to the bathroom, he took away her cellular phone and when they reached the bathroom he "back-hit" C. on her lip. In the bedroom hours later, he raped her despite her repeated protests. Minutes later when police arrived, defendant told C. that if she said something, he was "going to break [her] jaw." C. believed that if the officers had not come, she would have died. |

On these facts, a jury reasonably could find that the control and fear created by defendant when he beat C. with the bat, bed rail, and vacuum pole and inflicted great bodily injury on her continued through the 19-hour ordeal and that defendant utilized the weapons and inflicted the injuries as an aid in the crimes of rape, witness dissuasion, and false imprisonment. (See Masbruch, supra, 13 Cal.4th at p. 1011.) Thus, broadly construing the enhancements as we must, the evidence is sufficient to support the jury's findings that defendant used the weapons and inflicted great bodily injury in the commission of these crimes. FN2

FN2. Given the evidence we have recounted, it is not dispositive as defendant contends it is, that he "brought [C.] a glass of water, offered to bring her food, and accepted her refusal when he asked to have sex with her the first time."

(Opinion at 5-8.)

As noted above, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972). In this regard, federal collateral review of a state criminal conviction is limited to determining whether petitioner's federal constitutional or other federal rights have been violated and does not extend to review a state's application of its own laws. Cacoperdo v. Demosthenes, 37 F.3d 504, 507

(9th Cir. 1994) (recognizing that the decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990). Federal courts must defer to the state courts' interpretation of state sentencing laws. Estelle, 502 U.S. at 67-68; Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993). Absent a showing of fundamental unfairness, a state court's application or misapplication of its own sentencing laws does not generally justify federal habeas relief. Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). "So long as the type of punishment is not based upon any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern." Makal v. Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).[5]

Here, in his first and third claims for relief summarized above, petitioner has not raised a claim upon which federal habeas relief may be granted. Petitioner does not dispute that there was sufficient evidence to support the jury's finding that he personally used weapons and inflicted great bodily injury. Rather, he asserts that the use and infliction were remote in time from the criminal acts of which he was convicted and therefore did not occur "in the commission" of those crimes of conviction. Essentially, petitioner takes issue with the California Court of Appeal's interpretation of the phrase "in the commission" as set forth in California's sentencing enhancement statutes.[6] However, the state court's interpretation of this statutory language is binding on a federal court sitting in habeas corpus. Bradshaw v. Richey, 546 U.S.

---

[5] It has long been recognized that "a 'mere error of state law' is not a denial of due process." Swarthout v. Cooke, 562 U.S. ___, ___, 131 S. Ct. 859, 862 (2011) (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)). See also Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")

[6] The court notes that petitioner himself argued in his petition for review to the California Supreme Court that, "[h]ere, the issue is . . . a question of pure law: whether the evidence justified the finding that the great bodily injury and deadly weapon use occurred in the commission of the rape. The facts are not in dispute." (Resp't's Lod. Doc. 4 at 9.) This argument underscores that petitioner's claim presents an issue purely of state sentencing law.

74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Estelle v. McGuire, 502 U.S. at 67-68.

For these reasons, petitioner is not entitled to federal habeas relief with respect to claims 1 and 3 of his petition.

### B. Sentencing Error

Petitioner's claim 2 is supported merely by the following vague and conclusory allegation:

> The sentence was improper because it was unsupported by substantial evidence. A sentence is unauthorized if it could not lawfully have been imposed under any circumstances in the particular case. Thus, a sentence is deemed to be [sic] unauthorized sentence where the issue is a pure question of state law that does not require reference to the sentencing record of the court.

(Pet. at 4.) In his petition for review filed with the California Supreme Court, petitioner presented a similar claim in which he further argued that, "as a pure matter of law," the great bodily injury and deadly weapon enhancements did not occur "in the commission" of the rape. (Resp't's Lod. Doc. 4 at 6-17.) The undersigned has already addressed this argument, above.

In claim 4, petitioner argues that, by imposing consecutive sentences for rape (count 2) and the spousal abuse (count 3), the state trial court deemed these offenses to be separate acts, and therefore should not have imposed "spousal abuse" enhancements on the rape conviction. (Pet. at 6.)

The California Court of Appeal rejected petitioner's claims of sentencing error under state law, reasoning as follows:

> The Court Did Not Err in Sentencing Defendant
>
> Under subheadings entitled "The Sentence was Internally Inconsistent" and "The Sentence Must be Vacated," defendant makes the following four contentions: (1) the court's imposition of consecutive sentences for rape and corporal injury was an implicit finding that these crimes were separate and therefore precluded the

> court from imposing "spousal abuse" enhancements on the rape conviction; (2) the court's imposition of consecutive sentences for false imprisonment and witness dissuasion was an implicit finding that these crimes were not part of a continuous transaction and therefore precluded the court from "imposing enhancements which occurred during the commission of the spousal abuse"; (3) the court's imposition of sentence for the enhancements of weapons use and great bodily injury on the witness dissuasion count must be stricken because the crime involved conduct that occurred after the police arrived and was thus separate from the events that occurred before the police arrived; and (4) "if this Court finds that all of the offenses (with the possible exception of the witness dissuasion charge . . . ) were committed pursuant to a single objective, as part of one continuous transaction, then sentences on all of the remaining counts, save the rape charge, enhancements, and prior conviction must be stayed pursuant to [Penal Code] section 654." We disagree with all four contentions.
>
> The first three contentions rest on an argument we have already rejected, namely, there was insufficient evidence defendant used the weapons and inflicted great bodily injury in the commission of the rape, witness dissuasion, and false imprisonment. Having rejected this argument, we will not order the enhancements stricken as defendant would have us do.
>
> This leaves defendant's fourth contention, which fails as well. Defendant's contention for a stay rests on his argument that "if the invocation of the [great bodily injury enhancement and weapons use enhancement] is to be justified as to the rape charge, it can only be on the basis that all of the acts, from the initial beating to the final act of rape, constituted one continuous transaction, with the single objective of assaulting [C]. If this Court should so find, then all remaining counts must be stayed pursuant to [Penal Code] section 654."
>
> The premise on which defendant makes his argument is incorrect. As we have already discussed, there was substantial evidence to uphold the enhancements because a jury reasonably could find that the control and fear created by defendant when he beat C. and inflicted great bodily injury on her continued through the rape and that defendant utilized the weapons and the infliction of injury as an aid in completing the crimes, including rape. That is not the same as finding substantial evidence to uphold the enhancements because all of defendant's actions against C. had the "single objective of assaulting [C.]" As defendant's argument is based on that premise, the argument fails.

(Opinion at 8-10.)

/////

As did the state appellate court, this court finds petitioner's arguments in support of claims 2 and 4 for relief to be essentially duplicative of claims 1 and 3 and therefore rejects them for the reasons stated above. Insofar as petitioner is attempting to incorporate his argument, previously made to the California Supreme Court, that portions of his sentence should have been stayed pursuant to California Penal Code § 654, the undersigned notes that an alleged violation of this provision of state law does not provide a basis for the granting of federal habeas relief. Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1987) ("although it seems highly unlikely that the California courts violated [California Penal Code § 654] in sentencing Watts, we cannot review the contention as a matter of state law because 28 U.S.C. § 2254(a) (1982) authorizes the federal courts to grant habeas corpus relief only for violations of federal law.")

Therefore, federal habeas relief should be denied as to petitioner's claims 2 and 4 as well.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule
/////

11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 8, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
slau1143.hc